IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHANIE McGOVERN AND BRYAN X. McGOVERN, *as Co-Administrators of* THE ESTATE OF MICHAEL McGOVERN, | Case No. 3:15-CV-221 |
| Plaintiffs, | JUDGE KIM R. GIBSON |
| v. | |
| CORRECT CARE SOLUTIONS, LLC; CSABA MIHALY, M.D.; HANS RESINGER, PA; BARRY EISENBERG, DO; and JAWAD SALAMEH, MD, | |
| Defendants. | |

## MEMORANDUM OPINION

I. Introduction

Presently pending before the Court is the Motion for Summary Judgment (ECF No. 48) filed by Defendant Barry Eisenberg, D.O. ("Dr. Eisenberg"). This Motion has been fully briefed (*see* ECF Nos. 49, 50, 51, 52, 53, 54) and is ripe for disposition.

This case arises from the late Michael McGovern's ("Mr. McGovern") allegations of an Eighth Amendment violation and medical malpractice by Defendants while Mr. McGovern was an inmate at the State Correctional Institution at Laurel Highlands ("SCI-Laurel Highlands"). The crux of Mr. McGovern's Second Amended Complaint (ECF No. 31) is that Defendants were dilatory in their diagnosis and treatment of cancer initially found in Mr. McGovern's left mandible. The instant Motion for Summary Judgment pertains to only Dr. Eisenberg and asks this Court to dismiss all claims asserted against Dr. Eisenberg pursuant to Federal Rule of Civil Procedure 56(a).

For the reasons that follow, Dr. Eisenberg's Motion for Summary Judgment (ECF No. 48) is **DENIED.**

## II.     Jurisdiction and Venue

This Court has subject matter jurisdiction over the federal claims alleged in Count I of the Second Amended Complaint pursuant to 28 U.S.C. §§ 1331, 1343. This Court has subject matter jurisdiction over the supplemental state law claims alleged in Count II of the Second Amended Complaint pursuant to 28 U.S.C. § 1367. Because a substantial part of the events giving rise to Plaintiffs' claims occurred in the Western District of Pennsylvania, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

## III.    Relevant Procedural History[1]

Plaintiffs' filed their Second Amended Complaint on March 18, 2016. (ECF No. 31.) Dr. Eisenberg filed his Answer and Affirmative Defenses on June 17, 2016. (ECF No. 35.)

Dr. Eisenberg's Motion for Summary Judgment, Memorandum in Support thereof, and accompanying Appendix were filed on June 30, 2017. (ECF Nos. 48, 49, 50.) Dr. Eisenberg also filed a Supplemental Memorandum in Support of Motion for Summary Judgment and a Supplemental Appendix on July 14, 2017. (ECF Nos. 51, 52.) Plaintiffs filed their Brief in Opposition to Summary Judgment on July 25, 2017. (ECF No. 54.) Lastly, Dr. Eisenberg filed his Second Supplemental Memorandum in Support of Motion for Summary Judgment on August 7, 2017. (ECF No. 54.)

---

[1] The Court includes only the procedural history pertinent to the present Motion.

On January 15, 2018, Plaintiffs stipulated to dismissal, with prejudice, of all Defendants except for Dr. Eisenberg. (ECF No. 55.) This Court has not yet entered an order granting dismissal, and Dr. Eisenberg and the other Defendants have submitted briefs arguing whether, and if so how, the dismissal of the other Defendants should be handled. (ECF Nos. 57, 58.)

## IV. Relevant Factual History[2]

---

[2] The Court notes that Dr. Eisenberg and Plaintiffs have failed to comply with both the Local Rules of Court of the United States District Court for the Western District of Pennsylvania and the Practices and Procedures of this Chambers. Local Rule 56(B)-(C) and this Chamber's Practices and Procedures unequivocally require that the parties submit a separately filed concise statement of material facts in the form of separately numbered paragraphs with citations to particular parts of the record. *See* LCvR 56(B) and (C), http://www.pawd.uscourts.gov/sites/pawd/files/local_rules/lrmanual_0.pdf; Practices and Procedures of Judge Kim R. Gibson, at 27-29, http://www.pawd.uscourts.gov/sites/pawd/files/gibson_pp_0.pdf. This Court expects parties to adhere to its rules, especially those that emphasize their mandatory nature through the repeated use of "must," "shall," and "strict compliance." *See* LCvR 56(B) and (C) (using "must" and "shall"); Practices and Procedures of Judge Kim R. Gibson, at 27-29 (using "shall" 12 times and "strict compliance" twice). Beyond compliance with the rules for their own sake, concise statements of material fact and the responses thereto isolate the disputed facts and assure that the parties have produced materials in the record to support their underlying claims. Here, *within* his Memorandum in Support, Dr. Eisenberg included a section entitled "Concise Statement of Material Facts." (*See* ECF No. 49 at 1-6.) However, this section is not in the form of numbered paragraphs, does not cite to the record for all of its assertions, and was not filed separately. (*See id.*) Plaintiffs likewise failed to file a separate, numbered responsive concise statement. Instead, they included a "Summary of the Facts" section in their Brief in Opposition to Summary Judgment. (*See* ECF No. 53 at 2-6.) This section of Plaintiffs' brief is also not in the form of numbered paragraphs, does not cite to the record for many of assertions, and was not separately filed. (*See id.*) This Court's Local Rules and Practices and Procedures speak for themselves, and, thus, this Court will not further belabor the parties' procedural failings in moving for and opposing summary judgment. In the present case, the Court will deem the "fact" sections of Dr. Eisenberg and Plaintiffs' briefs to be their concise statement of material facts and response thereto and will devote its own time and resources to scouring the record to ascertain the undisputed material facts pertinent to deciding Dr. Eisenberg's Motion for Summary Judgment. However, the Court asks the parties to diligently review and adhere to this Court's Local Rules and Practices and Procedures in the future. Failure to comply with these rules often does not go without consequence and drains the Court's limited time and resources. *See, e.g., Wylie v. TransUnion, LLC*, Case No. 3:16-cv-102, 2017 WL 4357981, at *4-*8 (W.D. Pa. Sept. 29, 2017) (deeming the facts included in movant's concise statement to be admitted because non-movant failed to adhere to Local Rule 56 by filing a responsive statement); Practices and Procedures of Judge Kim R. Gibson, at 27-29 ("All material facts set forth in the Movant's Concise Statement of Undisputed Material Facts shall be deemed admitted for the purposes of summary judgment unless specifically controverted as set forth herein."). The Court also notes that Dr. Eisenberg failed to seek leave from this Court to file either of his supplemental briefs. *See* Practices and Procedures of Judge Kim R. Gibson Rule II(B). Nevertheless, the Court has reviewed these supplemental briefs and has considered them in deciding Dr. Eisenberg's Motion for Summary Judgment.

The following facts are undisputed unless otherwise noted, with the caveat that many of the medical facts and conclusions summarized below are derived from the reports of Plaintiffs' experts Dr. Peter Sherer and Dr. Paul Shields. (ECF No. 52-2; ECF No. 53-1.) To the extent the contents of these expert reports are disputed, the Court presumes the veracity of the Plaintiffs' experts for the purposes of deciding this Motion. *See supra* Part V.

On October 16, 2014, Mr. McGovern, complaining of a painful mass on his left mandible which had been increasing in size, was seen by Dr. Csaba Mihaly ("Dr. Mihaly") in the medical department at SCI-Laurel Highlands. (ECF No. 31 ¶ 12; ECF No. 49 at 1; ECF No. 50, Ex. A, at 36; ECF No. 52-2; ECF No. 53-1.) Dr. Mihaly noted that Mr. McGovern was immunocompromised due to his HIV positive status—a risk factor for developing certain kinds of cancer. (ECF No. 31 ¶ 16; ECF No. 49 at 1; ECF No. 52-2; ECF No. 53-1.) Dr. Mihaly observed that the lump had been progressively growing in size and diagnosed Mr. McGovern as suffering from a "submandibular gland adenocarcinoma until proven otherwise." (ECF No. 31 ¶ 16; ECF No. 49 at 1; ECF No. 50, Ex. A, at 38, 60-61; ECF No. 52-2; ECF No. 53-1.) Dr. Mihaly's notes indicate that Mr. McGovern should have an oncology consultation with Dr. Malhotra and possibly a fine needle biopsy. (ECF No. 31 ¶ 17; ECF No. 49 at 3.) Mr. McGovern had an X-ray of his left mandible ten days prior to October 16, revealing no bony pathology in the lump. (ECF No. 52-2; ECF No. 53-1.) Dr. Mihaly did not personally order the consult or the biopsy. (ECF No. 52-2; ECF No. 53-1.)

On October 31, 2014, Hans Reisinger, a Physician's Assistant ("PA Reisinger"), prepared a consultation request for an oncologist for Mr. McGovern. (ECF No. 31 ¶¶ 18, 19; ECF No. 49 at 2; ECF No. 52-2; ECF No. 53-1.) This oncology consult ultimately occurred via "telemed" on November 13, 2014. (ECF No. 31 ¶ 23; ECF No. 49 at 2; ECF No. 52-2; ECF No. 53-1.) Dr. Malhotra

diagnosed Mr. McGovern as suffering from a probable recurrence of squamous cell carcinoma and directed that he receive a CT scan of his neck with contrast, a needle aspiration biopsy, and an Ear-Nose-Throat ("ENT") evaluation. (ECF No. 52-2; ECF No. 53-1.) The CT was scheduled for December 4, 2014, the ENT consultation was scheduled for January 2, 2015, and the needle biopsy was scheduled for December 24, 2014. (ECF No. 52-2; ECF No. 53-1.)

Dr. Eisenberg reviewed a "Progress Note" on November 20, 2014, stamped his name on the Note, signed the Note, and marked the results of the test as "NCS—Not Clinically Significant." (ECF No. 31 ¶ 25; ECF No. 49 at 2.)

On December 4, 2014, the CT scan of Mr. McGovern's neck was performed. (ECF No. 52-2; ECF No. 53-1.) The ensuing report observed "some bony erosion" on the lump on Mr. McGovern's left mandible and cited "bone destruction malignancy" as a primary concern. (ECF No. 52-2; ECF No. 53-1.) The physician found the CT scan to be "suspicious for submandibular gland carcinoma." (ECF No. 52-2; ECF No. 53-1.) Dr. Mihaly reviewed these findings on December 8, 2014, identified them as "abnormal," and observed that Mr. McGovern's tongue was moving less and he was experiencing increased pain swallowing. (ECF No. 52-2; ECF No. 53-1.)

Dr. Eisenberg saw Mr. McGovern on December 11, 2014, at which point he noted that the mass was "most likely a lymph node carcinoma" and that there was also "invasion of the mandible as well." (ECF No. 31 ¶ 32; ECF No. 49 at 2; ECF No. 52-2; ECF No. 53-1.) Dr. Eisenberg also included an addendum to this note, describing Mr. McGovern's prognosis as "not good." (ECF No. 31 ¶ 33; ECF No. 49 at 2; ECF No. 52-2; ECF No. 53-1.) Mr. McGovern's December 11 examination by Dr. Eisenberg was for the purpose of addressing Mr. McGovern's acute

presentation and to handle a request for stronger pain medications. (ECF No. 50, Ex. D; ECF No. 50, Ex. J.)

On December 20, 2014, Mr. McGovern was sent to the Emergency Room of the Somerset Hospital due to left-side weakness, numbness, and headaches. (ECF No. 52-2; ECF No. 53-1.) A guided needle biopsy of the mass on Mr. McGovern's mandible was performed two days later, which revealed that the mass was "inflammatory in nature." (ECF No. 52-2; ECF No. 53-1.) The pathologist indicated that a "clinical correlation is required with a follow-up." (ECF No. 52-2; ECF No. 53-1.)

Mr. McGovern had an ENT consultation on January 2, 2015 at which the physician recommended an open biopsy and exploration of Mr. McGovern's neck. (ECF No. 52-2; ECF No. 53-1.) This biopsy and exploration was scheduled for February 26, 2015. (ECF No. 52-2; ECF No. 53-1.) Dr. Mihaly saw Mr. McGovern on January 27, 2015 and stated that he was trying to move the biopsy and exploration earlier. (ECF No. 52-2; ECF No. 53-1.) However, there is no documentation of such an effort. The biopsy and exploration confirmed squamous cell carcinoma and revealed an extensive "ulcerating lesion" and necrotic/dead tissue. (ECF No. 52-2; ECF No. 53-1.)

On March 12, 2015, a CT scan revealed a significant increase in the destruction of Mr. McGovern's mandible compared to the CT scan from December 4, 2014, a mass effect, and a shift of midline structures. (ECF No. 52-2; ECF No. 53-1.) On March 23, 2015, Mr. McGovern was seen by a doctor in the UPMC Department of Otolaryngology in Pittsburgh. (ECF No. 52-2; ECF No. 53-1.) The doctor stated that Mr. McGovern likely had a T4 oral cavity squamous cell carcinoma —

a stage IV cancer. (ECF No. 52-2; ECF No. 53-1.) At the time of the December 8, 2014 CT scan, Mr. McGovern's condition was likely a stage II cancer. (ECF No. 52-2; ECF No. 53-1.)

On April 7, 2015, Mr. McGovern underwent a number of serious surgeries at UPMC-Presbyterian in Pittsburgh from which numerous serious consequences flowed in regard to Mr. McGovern's quality of life. (ECF No. 52-2; ECF No. 53-1.) It is undisputed that Mr. McGovern died on January 12, 2016. (ECF No. 31 ¶ 1.)

Throughout this time, Medical Director, Jawad Salameh, M.D. ("Dr. Salameh"), Dr. Mihaly, Dr. Malhotra, and PA Reisinger were providing what appears to be the primary medical care on the mass on Mr. McGovern's left mandible. (ECF No. 49 at 3-4, citing attached depositions.) However, Plaintiffs' two experts—an oncologist and, like Dr. Eisenberg, a family practice doctor—authored reports stating their professional opinions that Dr. Eisenberg violated the requisite standard of care by failing to expedite Mr. McGovern's treatment, especially after recognizing the severity and time-sensitive nature of Mr. McGovern's condition. (ECF No. 52-2; ECF No. 53-1.) Plaintiffs' experts also assert that, regardless of the other medical professionals involved in Mr. McGovern's care, Dr. Eisenberg had an independent duty to Mr. McGovern and violated that duty by failing to treat Mr. McGovern's medical condition with urgency. (ECF No. 52-2; ECF No. 53-1.) Both experts also opined as to causation, i.e., Mr. McGovern would have had a better chance of survival and required less aggressive treatment due to a lesser spread of cancer and a smaller tumor had Dr. Eisenberg and the other Defendants exercised the requisite standard of care. (ECF No. 52-2; ECF No. 53-1.)

## V. Legal Standard

"Summary judgment is appropriate only where . . . there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than

a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).

## VI. Discussion

### A. The Court Will Excuse Plaintiffs' Failure to Timely File Their Expert Reports

As a preliminary matter, Dr. Eisenberg argues that this Court should exclude Plaintiffs' expert reports as untimely and, thus, grant summary judgment because, without expert reports, Plaintiffs have not produced sufficient evidence to support their claims. (ECF No. 49 at 9.) The Court agrees that Plaintiffs failed to file their expert reports within the time frame mandated by this Court's order. (ECF No. 47.) But, the Court will not disproportionately sanction Plaintiffs by excluding the reports.

Pursuant to this Court's Order of May 3, 2017, the deadline for Plaintiffs to submit their expert reports was June 2, 2017. (*See* ECF No. 47.) Dr. Eisenberg filed the present Motion for Summary Judgment on June 30, 2017. (ECF No. 48.) Plaintiffs did not produce their expert reports until after this filing, and Dr. Shields' report is dated July 19, 2017. (ECF No. 52-2; ECF No. 53-1.) As Plaintiffs concede, these reports are indisputably late. (*See* ECF No. 53-1.)

Rule 37 of the Federal Rules of Civil Procedure "clearly contemplate[s] the exclusion of untimely or improper expert disclosures (and the concomitant exclusion of expert testimony)" as an available sanction for a party's failure to comply with the rules of discovery or pretrial orders.

*Sheetz v. Wal-Mart Stores, East, L.P.*, No. 4:15-cv-02210, 2017 WL 5625768, at *2 (M.D. Pa. Nov. 22, 2017) (quoting *Withrow v. Spears*, 967 F. Supp. 2d 982, 1000 (D. Del. 2013)); Fed. R. Civ. P. 37. The imposition of sanctions for such a violation is a matter consigned to the trial court's discretion and "'will not be disturbed on appeal absent a clear abuse of discretion.'" *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (quoting *Semper v. Santos*, 845 F.2d 1233, 1238 (3d Cir. 1988)).

Four factors inform the district court's exercise of its discretion in determining whether counsel's failure to adhere to expert disclosure requirements warrants the extreme sanction of exclusion of the evidence: (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the court's order. *Meyers v. Pennypack Woods Home Ownership Assn.*, 559 F.2d 894, 904–05 (3d Cir. 1977). In addition to these factors, the United States Court of Appeals for the Third Circuit has advised that the trial court is to consider "the importance of the excluded testimony" in its assessment of the allegedly untimely or improper expert disclosure. *Id.; see Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289, 302 (3d Cir. 1991) (noting that the Third Circuit has consistently applied "the importance of the excluded testimony" as a factor for evaluating whether the district court properly exercised its discretion in excluding evidence).

While the Third Circuit has recognized exclusion of expert witnesses as an appropriate Rule 37 sanction for a party's failure to disclose the identities of its testifying expert witnesses or supply expert reports by the court-ordered deadline, it has likewise cautioned against imposing

such "an extreme sanction" where the violation at issue amounts to a "slight deviation" from pretrial notice requirements or where the violation occasions only "slight prejudice" to the movant. *In re Paoli R.R. Yard PCB Litig. (Paoli II)*, 35 F.3d 717, 791-92 (3d Cir. 1994) (internal quotation marks and citations omitted) (noting that exclusion of critical evidence may be justified where there has been a showing of "willful deception or flagrant disregard of a court order by the proponent of the evidence.").

The application of these factors and principles to this case do not warrant exclusion of the Plaintiffs' expert reports. Trial in this matter is not yet scheduled, and there is no evidence to suggest bad faith by Plaintiffs in failing to file their reports by the deadline imposed by this Court's order. The only prejudice suffered by Dr. Eisenberg is the time and resources expended to file his two supplemental briefs. However, the Court has considered those briefs despite Dr. Eisenberg's failure to request leave to file them, and this minor prejudice is not sufficiently severe to justify exclusion of Plaintiffs' experts reports.[3]

Looking at the importance of the evidence sought to be excluded, *see Paoli II*, 35 F.3d at 791-92, Plaintiffs' expert reports are so vital to the pursuit of their claims against Dr. Eisenberg that Plaintiffs' claims would likely not proceed beyond summary judgment without them. Due to Dr. Eisenberg's lesser involvement in Mr. McGovern's treatment compared to the other Defendants, an expert opinion is likely necessary to establish the requisite standard of care for Dr. Eisenberg under these facts and show whether his alleged conduct breached this standard. *See Pearson v. Prison Health Service*, 850 F.3d 536 (3d Cir. 2017) (discussing the circumstances under

---

[3] Additionally, Dr. Eisenberg has not asked this Court for a lesser sanction, such as the attorneys' fees associated with the two supplemental briefs, and the Court will not impose such sanctions under these circumstances *sua sponte*.

which expert testimony is and is not necessary to establish an Eight Amendment claim involving medical care in a prison).

Therefore, because of the lack of prejudice suffered by Dr. Eisenberg, the importance of the expert reports, and the lack of evidence to suggest any bad faith by Plaintiffs, the Court will not excessively punish Plaintiffs by excluding the expert reports of Dr. Sherer and Dr. Shields. *See Dudley v. South Jersey Metal, Inc.*, 555 F.2d 96, 99 (3d Cir. 1977).

### B. The Court Will Not Dismiss Plaintiffs' Eighth Amendment Claim

Dr. Eisenberg next asks this Court, regardless of whether the expert reports of Dr. Sherer and Dr. Shields are excluded, to dismiss Plaintiff's Eighth Amendment claim because (1) Plaintiffs have failed to establish that Dr. Eisenberg was deliberately indifferent when the other Defendants were already providing medical care for Mr. McGovern, (2) Dr. Eisenberg's treatment of Mr. McGovern was brief and not focused on Mr. McGovern's cancer, and (3) any delay allegedly attributable to Mr. McGovern did not cause the progression of Mr. McGovern's cancer. (*See generally* ECF Nos. 49, 51, 54.)

This Court acknowledges that Dr. Eisenberg has made effective and reasonable arguments and that this decision to deny Dr. Eisenberg's Motion for Summary Judgment is a close call. However, under the appropriate summary judgment standard, *see supra* Part V, the Court must resolve this close call in favor of the non-moving party and, accordingly, will deny Dr. Eisenberg's Motion. *See Farrell*, 206 F.3d at 278 (quoting *Armbruster*, 32 F.3d at 777) ("In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'").

Through its prohibition on cruel and unusual punishment, the Eighth Amendment prohibits the imposition of "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Pearson*, 850 F.3d at 534. Therefore, prison officials violate the Eighth Amendment when they act deliberately indifferent to a prisoner's serious medical needs by "intentionally denying or delaying access to medical care or interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97 at 104-05 (1976). In order to sustain this constitutional claim under 42 U.S.C. § 1983, as brought by Plaintiffs in this case, plaintiffs must make (1) a subjective showing that "the defendants were deliberately indifferent to [his or her] medical needs" and (2) an objective showing that "those needs were serious." *Pearson*, 850 F.3d at 534 (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)); *see also Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002).

In the present case, as in *Pearson*, the parties do not question the seriousness of Mr. McGovern's medical issues, and this Court finds it indisputable that Mr. McGovern's medical issues were serious. *See Pearson*, 850 F.3d at 534; *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003) ("[T]his Court has defined a medical need as serious if it has been diagnosed by a physician as requiring treatment."). Consequently, the only question remaining in order to decide Mr. Eisenberg's challenge to Plaintiffs' Eighth Amendment claim is whether Plaintiffs have presented sufficient evidence from which a reasonable jury could find that Mr. Eisenberg was deliberately indifferent. *See Pearson*, 850 F.3d at 534.

As the United States Supreme Court and the Third Circuit have explained, "deliberate indifference entails something more than mere negligence" and is a subjective standard that requires the official to both "be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists" and to "also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 835-37, (1994); *Pearson*, 850 F.3d at 538. The Third Circuit has previously found deliberate indifference in a variety of contexts including where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, and (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs. *Pearson*, 850 F.3d at 538 (citing *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

In the instant matter, the record before this Court just barely satisfies this standard for deliberate indifference for the purposes of summary judgment. According to Plaintiffs' experts, under the requisite standard of care, Dr. Eisenberg had an independent duty to Mr. McGovern—regardless of Mr. McGovern's treatment being primarily handled by the other Defendants—and Dr. Eisenberg breached that duty by failing to take any action or make any effort to expedite Mr. McGovern's testing or treatment. (*See* ECF Nos. 52-2, 53-1.) This potential negligence rises to the level of potential reckless indifference because Dr. Eisenberg consciously acknowledged the substantial risk of serious harm that existed when cancer is not diagnosed and treated and still failed, according to Plaintiffs' experts, to take appropriate medical action. (*See* ECF Nos. 52-2, 53-1.)

Dr. Eisenberg specifically added an addendum to his notes after seeing Mr. McGovern on December 11, 2014 that Mr. McGovern's "prognosis is not good" and admitted that every day matters when treating cancer. (*See* ECF Nos. 52-2, 53-1.) Yet, Dr. Eisenberg took what could, arguably, be interpreted to be as an impermissible "bystander" role by leaving the care of Mr.

McGovern to the other Defendants and not taking any independent action to provide for medical treatment in accordance with what Plaintiffs' experts identify as the appropriate standard of care. (*See* ECF Nos. 52-2, 53-1.) A reasonable jury could, arguably, interpret Dr. Eisenberg's actions as deliberately indifferent to Mr. McGovern's serious medical issues because the contents of his own notes demonstrate Dr. Eisenberg's conscious recognition of the urgent need for immediate testing and treatment, but Dr. Eisenberg made no efforts to hasten Mr. McGovern's medical care or otherwise alter Mr. McGovern's allegedly dilatory and reckless treatment up to December 11, 2014. Plaintiffs' experts also assert that the failure to expedite the necessary diagnostic work up, as the standard of care requires, and failure to ensure prompt treatment resulted in the spread of Mr. McGovern's cancer and worsening of Mr. McGovern's chance of survival. (*See* ECF Nos. 52-2, 53-1.)

Thus, although this Court does not agree with Plaintiffs that "there is ample evidence from which a reasonable jury could conclude that Dr. Eisenberg was deliberately indifferent to Mr. McGovern" (ECF No. 53 at 11), this Court does conclude that there is *sufficient* evidence. Accordingly, this Court denies Dr. Eisenberg's request to dismiss Plaintiffs' Eighth Amendment claim in Count I of the Second Amended Complaint.

### C. The Court Will Not Dismiss Plaintiff's Professional Negligence Claim

Lastly, Dr. Eisenberg asks this Court to dismiss Plaintiffs' Professional Negligence Claim. (*See* ECF Nos. 48, 49 at 7-9.) The Court likewise denies this request.

To establish a claim of medical negligence under Pennsylvania law, a plaintiff must show that: (1) the physician owed a duty to the patient, (2) the physician breached that duty to the patient, (3) the breach was the proximate cause of the harm suffered by the patient, and (4) the

damages suffered by the patient directly resulted from that harm. *See Hightower-Warren v. Silk*, 698 A.2d 51, 54 (Pa. 1997).

Here, the record is sufficient for a reasonable jury to find that all of these elements are satisfied. As discussed *supra* Part VI.B, the attached depositions and Plaintiffs' expert reports assert that (1) Dr. Eisenberg owed an independent duty to Mr. McGovern, (2) Dr. Eisenberg breached that duty by failing to take adequate action to expedite Mr. McGovern's testing and treatment, (3) this delay in testing in treatment allowed Mr. McGovern's cancer to worsen and his chance of survival to decrease, and (4) Mr. McGovern's quality of life and death resulted from his cancer that was worsened due to his insufficient medical care.

Therefore, the Court also denies Dr. Eisenberg's request to dismiss Plaintiffs' professional negligence claim in Count II of the Second Amended Complaint.

## VII. Conclusion

While it is a close call, the record is sufficient for a reasonable jury to find in favor of Plaintiffs on both counts of the Second Amended Complaint. Thus, for the foregoing reasons, Dr. Eisenberg's Motion for Summary Judgment (ECF No. 48) is **DENIED.**

A corresponding order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHANIE McGOVERN AND BRYAN X. McGOVERN, *as Co-Administrators of* THE ESTATE OF MICHAEL McGOVERN,<br><br>Plaintiffs,<br><br>v.<br><br>CORRECT CARE SOLUTIONS, LLC; CSABA MIHALY, M.D.; HANS RESINGER, PA; BARRY EISENBERG, DO; and JAWAD SALAMEH, MD,<br><br>Defendants. | Case No. 3:15-CV-221<br><br>JUDGE KIM R. GIBSON |

## ORDER

NOW, this 5th day of February 2018, upon consideration of the Motion for Summary Judgment (ECF No. 48) filed by Defendant Barry Eisenberg, D.O., and for the reasons set forth in the Memorandum Opinion accompanying this Order, it is **HEREBY ORDERED** that Defendant Eisenberg's Motion is **DENIED**.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE